UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN FRANCIS GROSS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civ. No. 15-cv-12970-IT |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 29, 2016

**TALAWNI, D.J.**

Plaintiff John Francis Gross ("Gross") seeks judicial review of the final decision by Commissioner of Social Security Carolyn Colvin ("Commissioner") denying his claim for disability insurance benefits. Following such review, the case is remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

**I.**   **Procedural History**

On April 30, 2012, Gross applied for disability insurance benefits. Soc. Sec. Admin. Record, Transcript ("TR"), 155 [#13]. Gross reported that he suffered from bulging discs in his lower back, depression, anxiety, insomnia, and chronic lower back pain. TR 159 [#13]. He stated that his conditions became severe enough to keep him from working on September 24, 2011. Id. Gross' claim was denied on October 22, 2012, and again after reconsideration on March 28, 2013. TR 68-69, 80-81 [#13]. A hearing on the matter was held on February 20, 2014, and the Administrative Law Judge ("ALJ") denied Gross' claim for benefits on March 31, 2014. TR 30,

9 [#13]. The Appeals Council declined Gross' request for review of the ALJ decision on May 14, 2015. TR 1-6 [#13].

## II. Standard of Review

The Social Security Administration is authorized to pay disability insurance benefits to persons who have a disability. "A person qualifies as disabled, and thereby eligible for such benefits, 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423 (d)(2)(A)).

The Social Security Administration has promulgated regulations that establish a five-step sequential evaluation process to determine disability. See 20 C.F.R. § 404.1520(a)(4)(2016). At step one, the agency considers work activity, and whether the claimant is doing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the agency looks at the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the agency looks at whether the impairment meets or equals the list of impairments presumed severe enough to render one disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. §404 Subpt. P, App. 1. At step four, the agency looks at whether the claimant can do previous work. 20 C.F.R. § 404.1520(a)(4)(iv). The burden of proof is on the claimant for steps one through four. At the fifth step, the agency considers vocational factors (age, education, and past work experience) to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(v); see also Barnhart, 540 U.S. at 24-25. It is the burden of the government to prove that there are sufficient jobs in the economy

that the claimant can perform. Tavarez v. Commisioner of Social Security, 138 Fed. Appx. 327, 329 (1st Cir. 2005) (per curiam).

An individual may obtain judicial review of any decision of the Commissioner, and the court has the power to affirm, modify, or reverse the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). A denial of benefits must be upheld, however, "unless the [Commissioner] has committed a legal or factual error in evaluating a particular claim." Manso-Pizarro v. Sec'y Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quotation marks and citation omitted). In reviewing such denial, the Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Sec'y Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

### III.   Facts

During the hearing on Gross' application, the ALJ made findings as to each of the five necessary determinations. At step one, the ALJ found that Gross had not been engaged in substantial gainful activity during the relevant time period. TR 15 [#13]. Under step two, the ALJ found that Gross suffered from degenerative disc disease which qualified as a severe impairment. TR 15 [#13]; 20 C.F.R. §404, Subpt. P. App. 1, §1.00(A) (2016). The ALJ rejected Gross' other claims of depression, anxiety and insomnia, finding that they do not cause "more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." TR 17 [#13]. At step three, the ALJ found that Gross' impairment did not meet or medically equal the severity of one of the listed impediments in 20 C.F.R. Pt. 404, Subpt. P,

App. 1. TR 18 [#13]. At step four the ALJ was called upon to determine Gross' residual functioning capacity ("RFC"). Id. The ALJ found:

> The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except he can stand or walk for no more than 2 hours in total over the course of an 8-hour workday. He can never climb ladders, but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl.

TR 18 [#13]. In assessing Gross' abilities, the ALJ considered the opinions of Dr. Jao and Dr. Holmes, state agency medical consultants. Dr. Jao opined that Gross was able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday; frequently climb, balance, kneel and crawl, and occasionally stoop or crouch. TR 10, 66 [#13]. Dr. Holmes opined that Gross could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday; and occasionally climb, balance, stoop, kneel, crouch or crawl. TR 20, 78-79 [#13]. The ALJ accorded lesser weight to Dr. Jao's opinion due to other objective medical evidence submitted in the case. TR 19-21 [#13]. The ALJ also gave weight to Gross' statements of his own limitations. TR 20 [#13]. Based on the testimony and evidence, the ALJ found that Gross would be unable to perform any past relevant work. TR 21 [#13].

Finally, at step five the ALJ sought to determine if, based upon Gross' age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers that Gross could perform. TR 21 [#13]. Under this step, the ALJ made several determinations. First, she found that Gross was 50 years old at the date of the alleged disability onset and therefore defined as an individual closely approaching advanced age. TR 21 [#13]; 20 C.F.R. 404.1563. Additionally, she found that Gross had a high school education and could communicate in English. TR 21 [#13]. The ALJ also found that the question of transferrable job

4

skills was irrelevant, as Gross would be classified as "not disabled," regardless of this question. TR 21 [#13]. The ALJ also used the testimony of vocational expert Dr. Robert Lasky. TR 21, 48-58 [#13]. The ALJ asked Dr. Lasky to identify "light jobs" that one would be able to perform given the additional restrictions assigned to Gross, most notably the restriction that he may only stand or walk for two hours in an eight hour work day. TR 22, 51 [#13]. Dr. Lasky identified three such jobs: an inspector, a photocopy machine operator, and a mail clerk. TR 22, 51-52 [#13]. During examination from Gross' attorney, Dr. Lasky stated that "there would be variability" as to the number of employers who would offer these positions to candidates who are limited to only two hours of standing a day. TR 22, 53 [#13]. Dr. Lasky also testified that it would not be uncommon for these types of positions to have additional responsibilities, beyond their job description. TR 55, 26 [#13]. Considering each of these factors, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." TR 21 [#13].

## IV. Discussion

In evaluating a final decision of the Commissioner of Social Security, a district court should consider both whether the final decision is supported by substantial evidence, as well as whether the correct legal standard was used. 45 U.S. C. § 405(g); Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). A finding is supported by substantial evidence if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez, 647 F.2d at 222. If there are discrepancies in the evidence, such conflicts are to be resolved by the ALJ, rather than the courts. Morales v. Commissioner of Social Security, 2 Fed.Appx. 34, 36 (1st Cir. 2001).

Gross argues that the ALJ's residual functional capacity determination is defective as a matter of law because the regulations dictate that a person limited to standing or walking two hours per day can only be found capable of sedentary work, and not light work as was found by the ALJ. Pl.'s Br. Supp. Mot. Reversing Comm'r ("Pl.'s Br.") 2 [#15]. The Commissioner contends that Gross' ability to lift 20 pounds occasionally and 10 pounds frequently, in addition to his ability to climb ramps or stairs, balance, stoop, kneel, crouch or crawl, puts his residual functional capacity in line with light work, and that the restriction on standing and walking does not significantly reduce the number of light jobs for which Gross qualifies. Mem. Law. Supp. Def.'s Mot. Affirm Comm'r. 9-13 [#19]. Given Gross' age, education, and lack of transferable skills, the distinction between finding Gross' residual functional capacity as sedentary versus light is dispositive to a determination of whether he receives disability benefits. 20 C.F.R. 400, Subpt. P. Appx. 2.

> Sedentary work is defined as:
>
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In this context, "occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251. For sedentary work, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Id.

> Light work is defined as:
>
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

> or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Under the definition of light work, "frequently" means "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251. Additionally, "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251.

When a person, such as Gross has exertional limits that fall between two ranges of work, SSR 83-12 provides guidance. SSR 83-12, 1983 WL 31253. SSR 83-12 states that when an individual's "exertional RFC" does not coincide with any of the detailed ranges (sedentary, light, medium), then the Medical-Vocational Guidelines do not compel a particular conclusion as to the individual's disability status. SSR 83-12, 1983 WL 31253; see also 20 C.F.R. 404, Subpt. P. App. 2, 200.00(d) (if the residual functional capacity falls between ranges of work (e.g. claimant can perform more than sedentary but less than light work) a conclusion of disabled or not disabled is not directed by the grid in App. 2). In a case like Gross', where "the exertional level falls between two rules which direct opposite conclusions, i.e., "not disabled" at the higher exertional level and "disabled" at the lower exertional level," then the adjudicator examines the degree the exertional capacity was reduced. SSR 83-12. SSR 83-12, 1983 WL 31253. If the exertional capacity is "only slightly reduced," the impact on the remaining occupational base may not warrant a finding of disabled. Id. ("An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of 'Not disabled.'") In other words, the claimant's

exertional limit may not reduce the total jobs available, and a finding of disabled would not be warranted. 20 C.F.R. 404, Subpt. P. App. 2, 200.00(a) ("[T]he existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded."). SSR 83-12 states that it is advisable for an adjudicator to use a vocational expert's assistance to determine the impact of the exertional capacity limits on the occupational base. SSR 83-12, 1983 WL 31253.

Gross' residual functional capacity falls between light and sedentary work, as he can lift 10 pounds frequently and 20 pounds occasionally, climb ramps or stairs, balance, stoop, kneel, crouch or crawl, but cannot climb ladders and is limited to standing or walking for only two hours in a six-to-eight hour work day. Gross argues that the two hour standing restriction is a "significant restriction" and requires a finding of sedentary. In support of this proposition, Gross points to SSR 83-14, which states that "the major difference between sedentary and light work is that most light work jobs – particularly those at the unskilled level of complexity - require a person to be standing or walking most of the workday." SSR 83-14, 1983 WL 31254. However, the field of light work can vary. The definition also states that the category could "involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

While Gross argues that the ALJ was incorrect as a matter of law, the Social Security regulations do not require claimants to be able to perform the full range of work within one category. It is in these situations that SSR 83-12 advises the ALJ use a vocational expert to determine the impact the reduced exertional capacity has on the occupational base. SSR 83-12, 1983 WL 31253. SSR 83-12; Martin v. Barnhart, 240 Fed. Appx. 941, 946 (3d Cir.2007) ("SSR

83–12 does not automatically dictate a finding of disability where an individual is limited by a sit/stand option. Rather, SSR 83–12 indicates that a [vocational expert] should be consulted."); Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004) ("Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform."); Gutierrez v. Barnhart, 109 Fed. Appx. 321 (10th Cir. 2004) (when there is a limit on the ability to stand or walk "[t]he ALJ should have solicited evidence from a vocational expert about plaintiff's ability to perform specific light jobs that may exist in significant numbers in the national economy."); Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) ("[W]hen a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person's profile could perform substantial gainful work in the economy.").

In Gross' case, the ALJ did consult a vocational expert. The ALJ asked the vocational expert to identify "other light jobs" that a person could perform given Gross' age, education and work experience, who were limited to light jobs and "cannot stand or walk for more than - I am going to say two hours total in an eight-hour day. This person could occasionally climb stairs; never climb ladders; occasionally balance, stoop, kneel, crouch, crawl." The vocation expert provided three jobs, including inspector, photocopy machine operator, and mail clerk. TR 51-52 [#13].

Based on the vocational expert's testimony, however, it is not clear what methodology he used to account for the reduced exertional capacity of Gross. While the hypothetical posed by the ALJ asked the vocational expert to assume a two hour walking or standing limit, it is unclear from the vocational expert's testimony how he accounted for that limit. When asked by the ALJ whether the numbers for the three jobs – inspector, photocopy machine operator, and mail clerk-

considered the limit to two hours of standing, the vocation expert said yes, but "[t[here's going to be some variability in terms of the kind . . . of jobs you're doing. Some jobs would be under the two hours of standing; other jobs would be over the two hours of standing." TR 57 [#13]. The vocational expert opined "If I wanted to give, say, a conservative estimate, we might cut those numbers in half." TR 57-58 [#13].[1] The vocation expert also stated that to plot the variability "typically what I would do is sort of plot this variability on something like a normal curve, and we'd have outliers on either end of that. And generally speaking, they would be closer to the DOT representation of those jobs." TR 53 [#13]. When asked whether the reduction was based on general experience or on actually observing the jobs as they are performed, the vocational expert responded "Well, I would say both, as well as the information that's in the DOT and the Standard Occupational Classification and similar such resources from the Department of Labor." TR 58 [#13-2].

While the vocation expert stated that his testimony was based on his education, experience and training, he did not provide a specific calculus for how he estimated the jobs available when considering Gross' specific exertional limits. For example, he did not explain his assertion that half of photocopying jobs would not include more than two hours of standing. When asked for an example of a photocopy machine operator, he gave the example of "[w]alking into Staples – a Staple store, any Office Max store, you're going to see people who are making copies with a photocopy machine." TR 55 [#13]. The vocation expert acknowledge that the job

---

[1] When the detailed numbers the vocational expert provided for the jobs available are compared to the O-Net website (the Department of Labor's website that gives occupational data), it is clear that the numbers given do not include any restrictions based on Gross' exertional limitation. For example, the number of jobs available for office machine operators 43-9071.00 (which includes copy center operators) are 69,600 nationally, and 1,860 in Massachusetts. These are virtually the same numbers provided by the vocational expert.

could require other forms of work. "You may be talking with customers at times, sitting down working on various kinds of expectations of what customers might – might want and what type of paper and what have you, in terms of the copies they'd be making." TR 55 [#13]. The vocation expert agreed that the job would vary from day to day, and could include being required to pick up 50 pounds of paper. TR 55 [#13]. He gave no basis for reasoning that a person with Gross' exertional limits would qualify for this position despite the job's acknowledged variability. The vocational expert provided no further information on how he determined the estimate for reducing the total number of jobs based on Gross' specific exertional limits.

Where it is the Commissioner's burden to prove that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy, the vocational expert's testimony raises substantial questions about the accuracy and reliability of his methodology. SSR 83-10 ("The ultimate question in the medical-vocational evaluation of the capability to do other work is whether work that an individual can do functionally and vocationally exists in the national economy."). In this case, the lack of clarity as to the methodology used to account for Gross' exertional limitations is grounds for remand, as the court is unable to conclude that the ALJ's findings were supported by substantial evidence.

For the foregoing reasons, the ALJ's step-five determination that jobs exist in significant numbers in the national economy that Gross can perform is not supported by substantial evidence. Accordingly, this case is remanded as to the step-five determination.

V.    **Conclusion**

For the foregoing reasons, the court ALLOWS Plaintiff's Motion for Order Reversing Decision of Commissioner [#14] and DENIES Defendant's Motion to Affirm Decision of

Commissioner [#18]. This matter is remanded to the ALJ for further proceedings consistent with this order.

    IT IS SO ORDERED.


Date: September 29, 2016                                  /s/ Indira Talwani
                                                                                   United States District Court